IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAL D. KENNEDY, SR. | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 13-2678 |
| v. | : | |
| | : | |
| ARAMARK CORPORATION, *et al*. | : | |
| *Defendants* | : | |

## MEMORANDUM OPINION

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                  APRIL 24, 2015

## INTRODUCTION

Before this Court are motions for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56 by Defendants,[1] [ECF 104, 105, 108, 109, 113, 114, 116], seeking to dismiss the second amended complaint filed by Chal D. Kennedy, Sr. ("Plaintiff"). [ECF 42]. Plaintiff, who is represented by counsel, has not filed a response to any of the motions despite having been given an extension until April 20, 2015, to file a response. Under the circumstances, these motions are ripe for disposition, and for the reasons stated herein, the motions for summary judgment are granted, and Plaintiff's second amended complaint is dismissed as to all Defendants.

## BACKGROUND

In light of Plaintiff's failure to respond to the pending motions, for purposes of the motions for summary judgment, the factual allegations have been derived from Plaintiff's second

---

[1] The entity and individual Defendants are: Aramark Corporation, Aramark Correctional Facility Services, Inc., Aramark Correctional Services, Inc., Aramark Correctional Services, LLC, Aramark Holdings Corporation, General Manager Walter Flaherty, Supervisor Veronica Lemon, Makeba Boyer, Robert House, Tynetta Palmore, Denise Nobblen ("*Aramark Defendants*"); City and County of Philadelphia, Commissioner Louis Giorla, Chief Medical Officer Dr. Bruce Herdman, Warden John P. Delaney, Deputy Warden Clyde D. Gainey, Deputy Warden Frederick Abellos ("*City Defendants*"); Dr. Eke Kalu; and Corizon Health, Inc., Mary Silva, Physician Assistant Helen Sarskaya ("*Corizon Defendants*").

amended complaint[2] and are viewed in the light most favorable to him. These allegations are summarized as follows:

> In the second amended complaint, Plaintiff avers that he was a pretrial detainee in the Philadelphia Prison System ("PPS"), housed at the Curran-Fromhold Correctional Facility ("CFCF") from August 17, 2009, until April 2013, (2d Am. Compl. ¶¶4, 39);
>
> City Defendants, collectively, direct, manage, and control the PPS, employ the individually-named PPS administrators and correctional officers, and entered into contracts with Aramark and Corizon Defendants, (*id.* at ¶15);
>
> Aramark Defendants, through the various Aramark entities, provide food and related facility management services at PPS, (*id.* at ¶5);
>
> Corizon Defendants provide all medical services to the inmates housed at PPS, (*id.* at ¶11); and Defendant Dr. Kalu is a Regional Medical Director at Corizon Health, Inc. (*Id.* at ¶13).
>
> From sometime in the year 2010 until his release in April 2013,[3] Plaintiff worked in the "Retherm Ovens" (a radiant or convection heated oven) located in two housing units at CFCF, eight or more hours per day, seven days per week. (*Id.* at ¶82). According to the second amended complaint, Aramark Defendants compelled him to repeatedly use highly toxic, harmful and hazardous chemicals to clean the ovens without providing any protective gear, such as respirator masks, rubber gloves, goggles, or training on how to decontaminate himself after using the cleaning chemicals. (*Id.* at ¶¶89, 91, 92, 93). Plaintiff claims he was also denied the use of the showers, causing the toxic chemicals to be embedded in his pores and soft tissues. (*Id.* at ¶86). As a result, Plaintiff developed head and skin rashes, blurred vision, persistent coughs, shortness of breath, nosebleeds, and headaches. (*Id.* at ¶95). Although Plaintiff made numerous sick call requests related to these symptoms in accordance with PPS's policies and procedures,

---

[2] In considering motions for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). After examining the evidence of record, a court should grant a motion for summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Because Plaintiff did not respond to the motions, he has not presented any evidence of record. Therefore, this Court has relied upon the factual allegations in Plaintiff's second amended complaint.

[3] Plaintiff was released to house arrest, but later re-incarcerated for two days, released, then re-incarcerated from October 24, 2013, until December 20, 2013, at which time he was transferred to the Pennsylvania State Correctional System, where Plaintiff currently remains. Kennedy Dep., 5/21/14, N.T. 19:23-22:5.

Plaintiff was told by Corizon Defendants that there was nothing they could do to treat his complaints. (*Id.* at ¶97).

For nine months during his detention at CFCF, Plaintiff was an Inmate Building Representative for his housing units and participated in monthly meetings with Defendants City, Aramark, and Corizon. (*Id.* at ¶¶40, 41). At these meetings, Plaintiff repeatedly told Defendants that inmates were not offered protection from the harmful chemicals they were compelled to use to clean the ovens, and that many inmates were complaining of adverse health effects. (*Id.* at ¶42). Plaintiff contends that Defendants, however, had decided and agreed amongst themselves to ignore Plaintiff's complaints; and that City Defendants have not investigated or audited Aramark Defendants' compliance with workplace safety rules and regulations at PPS. (*Id.* at ¶¶48, 49).

Procedurally:

On May 16, 2013, Plaintiff filed a 250-page complaint against Defendants alleging violations of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §1983, the First, Fifth, Thirteenth, and Fourteenth Amendments of the United States Constitution, unidentified federal statutes, and state tort laws. Therein, Plaintiff sought to obtain the implementation of medical monitoring, injunctive relief, and punitive damages. [ECF 1]. On May 30, 2013, Plaintiff's complaint was dismissed, without prejudice, as frivolous and for failure to comply with Rule 8(a)(2). [ECF 10].[4] On June 12, 2013, Plaintiff filed an amended complaint. [ECF 11]. On July 22, 2013, this matter was reassigned to the undersigned judge. Plaintiff filed a second amended complaint on September 13, 2013. [ECF 42].

On December 4, 2013, a Scheduling Order was issued setting forth the procedural deadlines. [ECF 59]. This Order was revised on June 9, 2014, setting forth that all fact discovery was to be completed by October 23, 2014, expert reports were to be filed by November 20, 2014, dispositive motions were to be filed by February 13, 2015, and responses thereto were to be filed by February 27, 2014. [ECF 96].

Aramark Defendants, on November 21, 2014, and City Defendants, on November 26, 2014, filed motions for summary judgment in accordance with Rule 56(c), contending that Plaintiff's claims are time-barred pursuant to Pennsylvania's two-year statute of limitations. [ECF 104, 105]. On January 23, 2015, Defendant Dr. Kalu filed a Rule 56(c) motion for summary judgment arguing that no genuine dispute of material fact exists and Plaintiff cannot prove his claims. Similar motions were also filed by Corizon Defendants on February 5, 2015, by City Defendants on February 13, 2015, and by Aramark Defendants on February 13, 2015. [ECF 108, 109, 113, 114]. Plaintiff has not formally filed a response to these motions, although in his pretrial memorandum, filed on March

---

[4] *See also* Transcript of Proceedings held before the Honorable Norma L. Shapiro on 5/29/2013. [ECF 34].

3

30, 2015, Plaintiff offers some argument in opposition to the motions for summary judgment. [ECF 127].

At the April 8, 2015 final pretrial conference, counsel for Plaintiff requested time to file a response to the various motions for summary judgment. Defense counsel consented and this Court issued an Order directing Plaintiff to do so by April 20, 2015, and verbally and as part of the Order, warned Plaintiff's counsel that no further extensions would be granted. [ECF 129]. Three days prior to the deadline, on April 17, 2015, Plaintiff filed a motion requesting a seven-day extension of time to file a response to the motions for summary judgment. [ECF 131]. Plaintiff's motion was denied. [ECF 132].

## STANDARD OF REVIEW

Rule 56 governs the scope for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When reviewing summary judgment motions, a court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

4

affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *See* Fed. R. Civ. P. 56(c)(1)(A-B). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 476 U.S. 574, 586 (1986). The non-moving party may not rely on bare assertions, conclusory allegations or suspicions, *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex Corp.*, 477 U.S. at 324. Rather, the non-moving party must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

## DISCUSSION

In these motions for summary judgment, this Court is asked to decide whether Plaintiff's claims are time-barred, whether Plaintiff can establish his federal and state claims, and whether Plaintiff can establish a causal nexus between the alleged exposure to toxic chemicals and his injuries. Pursuant to the Revised Scheduling Order dated June 9, 2014, Plaintiff had until February 27, 2015, to file a response, and did not. At the final pretrial conference, the Defendants consented to allow a response to be filed by April 20, 2015, and yet again, no response was filed. Plaintiff, however, has provided a vague and untimely "response" to these summary judgment motions in his pretrial memorandum. Therein, Plaintiff contends that the claims are timely because the lawsuit was filed within two years of his last exposure to the toxic, harmful and hazardous chemicals, (Plaintiff's Pretrial Mem. 1); that he was denied medical treatment for his illness and conditions which were caused by the long-term exposure to said

5

chemicals, (*id*. at 5); that he has sufficiently pled to "an unlawful agreement" among Defendants to support the conspiracy claims, (*id*. at 6); that he does not need an expert to prove causation or damages, (*id*.); that whether his claims rise to the level of extreme and outrageous conduct is for the jury to decide, (*id*. at 7); and that Defendants' motions for summary judgment were not filed in a timely manner without leave of court and, therefore, should be denied. (*Id*. at 11).

### *Timeliness of Motions for Summary Judgment*

Although Plaintiff contends that Defendants' motions for summary judgment were not timely filed, he is mistaken. As stated, on June 9, 2014, a Revised Scheduling Order was issued which established deadlines for procedural events. Specifically, the Order directed that dispositive motions were to be filed by February 13, 2015, and responses were due by February 27, 2015. [ECF 96]. In accordance with this Revised Scheduling Order, Defendants filed motions for summary judgment on: November 21, 2014, [ECF 104]; November 26, 2014, [ECF 105]; January 23, 2015, [ECF 108]; February 5, 2015, [ECF 109]; February 13, 2015, [ECF 113]; and on February 18, 2015, [ECF 116], correcting or amending a previous motion. [ECF 114]. Consistent with the Revised Scheduling Order, all the motions for summary judgment were timely filed.

### *Statute of Limitations*

As to the merits of Aramark and City Defendants' respective motions, Defendants argue that Plaintiff's second amended complaint should be dismissed because all of the claims alleged are time-barred pursuant to Pennsylvania's two-year statute of limitations.

Generally, a cause of action accrues and the statute of limitations begins to run when "the first significant event necessary to make the claim suable" occurs. *Ross v. John-Manville Corp.*, 766 F.2d 823, 826 (3d Cir. 1985). The accrual date of a civil rights action is a question of federal

law that is *not* resolved by reference to state law. *Frasier-Kane v. City of Philadelphia of Philadelphia*, 517 F.App'x 104, 106 (3d Cir. 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original)). Under federal law, a cause of action accrues, and the statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (quoting *Sameric Corp. v. City of Philadelphia of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998)). The cause of action accrues even though the full extent of the injury is not then known or predicted. *See Wallace,* 549 U.S. at 391; 1 C. Corman, Limitation of Actions §7.4.1, pp. 526-527 (1991).

The statute of limitations period for a §1983 civil rights action is the limitations period for personal injury torts in the state where the cause of action arose. *Wallace*, 549 U.S. at 387. Plaintiff's alleged cause of action arose in the CFCF prison facility located in Pennsylvania. Thus, the state's two-year statute of limitations governing personal injury claims applies to Plaintiff's civil rights claims. *See* 42 Pa. C.S.A. §5524(2);[5] *Kach*, 589 F.3d at 634; *Garvin v. City of Philadelphia*, 354 F. 3d 215, 220 (3d Cir. 2003). Where the alleged injury is ongoing, commonly referred to as a continuing tort, Pennsylvania courts have held that the statute of limitations begins to run "when the plaintiff knows, or reasonably should know: (1) that he has been injured and, (2) that his injury has been caused by another party's misconduct." *Shaud v. Sugarloaf Twp. Supervisors*, 2011 U.S. Dist. LEXIS 25229, at, *7-8 (E.D. Pa. Mar. 11, 2011) (quoting *Cathcart v. Keene Industries Insulation*, 471 A.2d 493, 500 (Pa. Super. 1984)).

While federal law governs the cause of action's accrual date, courts will generally apply state law tolling principles, when applicable, in a §1983 case. *Leonard v. City of Pittsburgh,* 570 F.App'x 241, 244 (3d Cir. 2014) (citing *Kach*, 589 F.3d at 639). Under Pennsylvania's discovery

---

[5] An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another must be commenced within two years. 42 Pa. C.S.A. §5524(2).

7

rule, the statute of limitations will toll "'where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period.'" *Id.* at 244 (citing *Meehan v. Archdiocese of Phila.*, 870 A.2d 912, 919 (Pa. Super. 2005) (quoting *Kingston Coal Co. v. Felton Min. Co., Inc.*, 690 A.2d 284, 288 (Pa. Super. 1997))).

In the present matter, Defendants City and Aramark contend that Plaintiff knew of his injuries as early as 2010. According to Plaintiff's own sworn deposition testimony, Plaintiff began working in the Retherm oven in D Building in 2010, and immediately requested protective gear, such as gloves and masks, because he started to experience headaches and other symptoms, such as nosebleeds and shortness of breath. Plaintiff attributed these symptoms to the chemicals that were used to clean the ovens which was the reason he requested protective gear.[6] Although Plaintiff could not provide the minutes of the Building Representative Meetings, Plaintiff testified that the meeting minutes would reflect that he started to raise the issues about his (and other inmates') symptoms and the need for protective gear sometime in 2010, although he is not sure when in 2010.[7]

Viewing these facts in the light most favorable to Plaintiff, it is unclear when in 2010 he commenced working in the Retherm ovens. Giving Plaintiff the benefit of any doubt, this Court will assume that Plaintiff commenced working in the Retherm ovens in December 2010, at the latest. Thus, Plaintiff knew of the chemical exposure and his injury as early as December 2010. The accrual date for his cause of action began as of the date of his knowledge of an injury and, thus, he had until December 2012 to file a complaint. Plaintiff, however, did not file his complaint until May 26, 2013, several months beyond the statute of limitations. Defendants City

---

[6] Kennedy Dep., 5/21/14, N.T. 330:15-333:16.
[7] *Id.* at 344:14-345:14.

8

and Aramark have demonstrated through Plaintiff's deposition testimony and filed grievances, *albeit* undated but corroborated by Plaintiff's testimony, that Plaintiff knew of his injury in 2010. Plaintiff has not, nor can he, rebut the Defendants' arguments. Thus, pursuant to Rule 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Consequently, in the absence of a genuine dispute of material fact as to when Plaintiff knew of his injuries, Plaintiff's claims are time-barred against Defendants Aramark and City. These Defendants are entitled to summary judgment on this basis.

Plaintiff has inferred that the statute of limitations on his claims should be tolled pursuant to the discovery rule and that City and Aramark Defendants' conduct constitute a continuing tort. This inference is misplaced since neither doctrine applies. Plaintiff unequivocally stated that he was aware of his injury when he first started working in the Retherm ovens in 2010, experienced adverse symptoms, and informed Defendants City and Aramark of his complaints. *See Leonard*, 570 F.App'x at 244 (under Pennsylvania law, discovery rule was not applicable to, and did not toll limitations period for, plaintiff's §1983 claim against city because plaintiff became aware of her injury as it occurred); *see also Morganroth & Morganroth v. Norris*, 331 F.3d 406, 417 n. 6 (3d Cir. 2003) (continuing violation theory, while it tolls the statute of limitations, does not apply when plaintiff is aware of the injury at the time it occurred) (citing *Fowkes v. Penn. R.R. Co.*, 264 F.2d 397 (3d Cir. 1959)); *Kichline v. Consol. Rail Corp.*, 800 F.2d 356, 360 (3d Cir. 1986)). Undisputedly, Plaintiff knew of his injuries in 2010; thus, neither the continuing tort doctrine nor the discovery rule are applicable to toll the statute of limitations on his claims.

9

*Federal Claims*

Plaintiff's federal claims against Defendants consist of alleged violations of Plaintiff's constitutional rights (Count One, against all Defendants); deliberate indifference to a serious medical condition (Count Two, against all individual Defendants); failure to supervise (Count Three against the Aramark entity Defendants and Count Four against the Corizon entity Defendants); state-created danger (Count Five, against Defendant City); a claim of *respondeat superior* (Count Seven, against the Aramark Defendants); and retaliation (Count Eight, against the City, Aramark, and Corizon entity Defendants). Succinctly, each of these claims will be addressed.

Claims against Defendant City for municipal liability under §1983 cannot be based on the *respondeat superior* doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights. *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (citing *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691-95 (1978)). Municipal liability only attaches when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694; *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). Therefore, Plaintiff must show the existence of a *policy* through evidence of a "decision maker possessing final authority to establish municipal policy with respect to the action issuing an official proclamation, policy, or edict." *Watson*, 478 F.3d at 155; *Bielevicz*, 915 F.2d at 850 (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

A *custom* can be established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to

10

constitute law." *Bielevicz*, 915 F.2d at 850 (citing *Andrews*, 895 F.2d at 1480). A custom may be established by proving knowledge of, and acquiescence to, a practice. *Watson*, 478 F.3d at 156; *Fletch v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989). Establishing the existence of a policy or custom requires that a plaintiff "show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz*, 915 F.2d at 850 (citing *Andrews*, 895 F.2d at 1480). Additionally, a plaintiff bears the burden of proving that such a policy or custom was the proximate cause of the injuries suffered. *Watson*, 478 F.3d at 156.

In the context of a Fourteenth Amendment claim based on medical care (pertaining to pretrial detainees, such as Plaintiff), "[o]nly 'unnecessary and wanton infliction of pain' or 'deliberate indifference to the serious medical needs' of prisoners are sufficiently egregious to rise to the level of a constitutional violation." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm. *Everett v. Nort*, 547 F.App'x 117, 121 (3d Cir. 2013) (quoting *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009)). Further, "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *U.S. ex rel. Walker v. Fayette Cnty., Pa.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979). Claims of negligence or medical malpractice do not constitute deliberate indifference. *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 n. 2 (3d Cir. 2001).

Whether an official may be held liable on a failure to supervise claim, the plaintiff must identify a supervisory policy or practice that the supervisor failed to employ, and then prove that:

11

(1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure. *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001); *Sample v. Diecks,* 885 F.2d 1099, 1118 (3d Cir. 1989).

To establish a meritorious "state-created danger" claim, Plaintiff must show: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281-82 (3d Cir. 2006) (quotations and citations omitted). Under the fourth element of a state-created danger claim, "[l]iability under the state-created danger theory is predicated upon the states' *affirmative acts* which work to the plaintiffs' detriments in terms of exposure to danger." *Id.* at 282 (quoting *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School,* 972 F.2d 1364, 1374 (3d Cir. 1992) (*en banc*) (emphasis supplied)); *Brown v. Grabowski,* 922 F.2d 1097, 1100–01 (3d Cir. 1990) (finding that *DeShaney v. Winnebago Cty. Soc. Servs. Dept.*, 489 U.S. 189 (1989), holds "that a state's failure to take affirmative action to protect a victim from the actions of a third party will not, in the absence of a custodial relationship . . . support a civil rights claim."). It is the misuse of state authority, rather than a failure to use it, that can violate the Due Process

12

Clause. *Barkes*, 766 F.3d at 321 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (quotation marks, emphasis omitted)).

To prevail on a §1983 retaliation claim, Plaintiff must prove: (1) that the conduct leading to the alleged retaliation was constitutionally protected; (2) that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected conduct was a substantial or motivating factor in the decision to discipline him. *Alexander v. Fritch*, 396 F.App'x 867, 871 (3d Cir. 2010); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). However, "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id.* at 334.

Here, Defendants have filed timely motions for summary judgment addressing all of Plaintiff's alleged claims against them, and have submitted evidence to support their arguments. Specifically, Defendants have argued that Plaintiff cannot point to any facts or evidence in support of the existence of a custom or policy of ignoring or "turning a blind eye" to any Defendants' alleged intentional exposure of Plaintiff to toxic, harmful and hazardous chemicals. Further, Plaintiff cannot establish that the individual Defendants were deliberately indifferent to his medical needs when the prison medical records reveal a history of medical attention given to the Plaintiff, *albeit,* none for the treatment of skin rashes, blurry vision, shortness of breath, or nosebleeds,[8] nor do these prison medical records mention that Plaintiff worked in the kitchen or Retherm ovens or that he was exposed to chemicals.[9] Plaintiff has also failed to provide expert

---

[8] The medical records detail Plaintiff's visits to the Chronic Care Clinic for hypertension, lower back pain, physical therapy, and left hand injury. The records indicate that Plaintiff sought treatment for headaches but do not disclose any relation to toxic cleaning chemicals or working in the kitchen or Retherm ovens.

[9] Corizon Dfts' Statement of Facts ¶¶31, 32; Kennedy Dep., 5/21/14, N.T. 206:9-208:18.

evidence that any of his injuries were caused by exposure to the toxic degreasers used.[10] In fact, Plaintiff has taken no depositions nor has he provided any expert reports to substantiate a connection between his purported symptoms and his use of cleaning chemicals, or to establish the alleged toxicity of the chemicals used. *See e.g., Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 165 (3d Cir. 1999) (district court relying on total lack of causation evidence absent expert testimony is a proper ground for summary judgment). Additionally, Plaintiff does not point to any evidence of the existence of a supervisory policy or practice that Defendants Aramark or Corizon failed to employ to prevent acts of deliberate indifference against him and other inmates; nor has he pointed to any facts or evidence to establish that Defendant City knew or should have known that Plaintiff's harm was foreseeable, that its actions shocked the conscience, that its employees affirmatively used their authority in any way that created a danger to the Plaintiff or other inmates; and/or that Defendants "disciplined" Plaintiff for engaging in constitutionally-protected conduct.

In short, by failing to respond to Defendants' contentions and offer evidence either by affidavit, declaration, or in any form to support his claims, Plaintiff has failed to meet his obligations under Rule 56(c). Consequently, this Court finds that Plaintiff has failed "to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Jakimas v. Hoffann-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (citing *Celotex Corp.*, 477 U.S. at 322-23)). Therefore, summary judgment is proper as such a failure "necessarily renders all other facts immaterial." *Id.* Thus, having carefully reviewed and assessed the facts, evidence, and arguments set forth in Defendants' motions for summary judgment and Plaintiff's failure to formally respond, this Court is compelled to grant the motions for summary judgment.

---

[10] Kennedy Dep., 5/21/14, N.T. 195:19-25.

*Supplemental Jurisdiction*

Having dismissed all of the federal claims over which this Court had original jurisdiction, what remains are Plaintiff's state law claims for medical negligence, intentional infliction of emotional distress, and conspiracy. Under the circumstances and pursuant to 28 U.S.C. §1367(c)(3), this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Figueroa v. Buccaneer Hotel Inc.,* 188 F.3d 172, 181 (3d Cir. 1999); *Eberts v. Wert,* 1993 WL 304111, at *5 (E.D. Pa. Aug. 9, 1993) (holding that "Courts should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed."). Therefore, Plaintiff's state law claims for medical negligence at Count Six against the Corizon Defendants, intentional infliction of emotional distress at Count Nine and conspiracy at Count Eleven against all Defendants, are dismissed, without prejudice.

**CONCLUSION**

For the reasons stated herein, the Defendants' motions for summary judgment are granted and Counts One, Two, Three, Four, Five, Seven, and Eight of the second amended complaint are dismissed with prejudice. The state law claims of medical negligence (Count Six), intentional infliction of emotional distress (Count Nine), and conspiracy (Count Eleven) of the second amended complaint, are dismissed without prejudice. An appropriate Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C., J.